# In the United States Court of Appeals for the Fifth Circuit

BRET BODIN; BRAD NEWELL; DARIAN MORGAN; MICHAEL ROSAS; MID-CITY MIKE RENTALS, L.L.C.; AIRBNB, INC.,
*Plaintiffs - Appellants*,

*v.*

NEW ORLEANS CITY,
*Defendant - Appellee.*

Civil Proceedings On Appeal from the United States District Court for the Eastern District of Louisiana, Hon. Jay C. Zainey Presiding
Civil Action No. 2:25-cv-00329

## ORIGINAL BRIEF OF DEFENDANT-APPELLEE, THE CITY OF NEW ORLEANS

**SEAN M. MARKEY, LSB #41467**
ASSISTANT CITY ATTORNEY
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET
CITY HALL - ROOM 5E03
NEW ORLEANS, LOUISIANA 70112
TELEPHONE:  (504) 658-9800
FACSIMILE:   (504) 658-9868
E-MAIL:        sean.markey@nola.gov

*Attorneys for Defendant-Appellee*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Plaintiffs-Appellants:

   Bret Bodin; Brad Newell; Darian Morgan; Michael Rosas; Mid-City Mike Rentals, L.L.C.; Airbnb, Inc.

2. Counsel for Plaintiffs-Appellants:

   Mark Cunningham; Madeline Melissa Freese/Jones Walker, LLP;

   Sarah Harrington; Alex Berengaut; Chloe Goodwin; David Zionts; Daniel Randolph; Jeffrey Davidson/Covington & Burling LLP;

   Paul Clement; Andrew Lawrence; Mitchell K. Pallaki/Clement & Murphy PLLC.

3. Defendant-Appellee:

   The City of New Orleans.

4. Counsel for Defendant-Appellee:

   Sean Michael Markey; Corwin St. Raymond; Donesia Turner; Sherri Hutton/City of New Orleans.

5. Amici Curiae:

NetChoice, Chamber of Progress, and Pelican Institute for Public Policy.

6. Counsel for Amici Curiae:

Scott A. Keller; Steven P. Lehostsky; Serena Orloff; Jeremy Evan Maltz;

Adeline Lambert; Meredith R. Pottorff/Lehotsky Keller Cohn LLP.

Paul D. Taske/NetChoice.

Sarah Harbison/Pelican Institute for Public Policy.

SO CERTIFIED this 12th Day of December 2025.

/s/ *Sean M. Markey*
**Sean M. Markey, LSB #41467**
*Attorney for Defendant-Appellee*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fed. R. App. P 34(a)(2)(C), Appellees respectfully submit that oral argument is not necessary. The briefs and the record adequately present the factual and legal arguments raised in the district court. Additionally, because this appeal involves the application of well-established principles of law and the review of several issues this Court has already examined at length, oral argument is unnecessary to aid the Court's decisional process.

# TABLE OF CONTENTS

Certificate of Interested Persons ............................................................................ ii

Statement Regarding Oral Argument .......................................................................iv

Table of Contents ......................................................................................................v

Table of Authorities ............................................................................................... vii

Statement of Jurisdiction..........................................................................................1

Statement of Issues Presented for Review ...............................................................1

Statement of the Case...............................................................................................2

    A. The City's STR Regulations.............................................................................2

        1. The 2019 Ordinance and *Hignell I*...........................................................2

        2. The 2023 Ordinance and *Hignell II*...........................................................5

        3. The 2024 Ordinance .................................................................................7

    B. This Litigation .................................................................................................8

Standard of Review.................................................................................................11

Summary of the Argument......................................................................................12

Law and Argument..................................................................................................13

    I. Host Plaintiffs have not pleaded a cognizable claim under the Takings Clause of the Fifth Amendment. ..........................................................................13

        A. The Host Plaintiffs *per se* takings claim fails because the 2023 Ordinances do not effect a physical appropriation or invasion of property ................13

            1. The Cases cited by Host Plaintiffs do not support their novel legal theory ..................................................................................................15

2. Host Plaintiffs' theory relies on a distortion of the Supreme Court's decisions in *Cedar Point* and *Lingle* ...................................................16

B. The Host Plaintiffs *per se* takings claim fails because there is no fundamental right to engage in short-term rentals ...................................19

1. The district court correctly determined that there is no longstanding tradition of short-term rentals..............................................................20

2. This Court's previous rulings have foreclosed Host Plaintiffs' claims ......................................................................................................23

3. Host Plaintiffs cannot ignore this Court's ruling in *Hignell II* simply because it arose from a Due Process Clause Claim ...........................25

C. The Host Plaintiffs' regulatory taking claim fails because it relies on the same failed premise as their *per se* takings claim ...................................28

II. The 2024 Ordinance does not violate Section 230 of the Communications Decency Act ...........................................................................................30

A. The verification requirements do not require Airbnb to monitor, screen or delete third-party content..........................................................................32

B. This Court's "functional" analysis does not demonstrate that the 2024 Ordinance violates Section 230 ...............................................................33

C. The district Court did not misapply Section 230.......................................35

Conclusion ................................................................................................................36

Certificate of Service ...............................................................................................37

Certificate of Compliance ........................................................................................38

# TABLE OF AUTHORITIES

**CASES**

*A.B. v. Salesforce, Inc.,* <u>123 F.4th 788</u> (5th Cir. 2024) ..........................................32

*Ashcroft v. Iqbal.,*<u>556 U.S. 662, 678</u>, (2009) .........................................................11

*Bell Atl. Corp v. Twombly,* <u>550 U.S. 544, 555</u> (2007) .............................................11

*Butler v. Jones*, <u>21 So. 2d 181</u> (La. Ct. App. 145) ...................................................22

*Burton v. Freescale Semiconductor, Inc.*
<u>798 F.3d 222, 267-277</u> (5th Cir.2007) ...............................................................12

*Casitas Municipal District v. U.S.,* <u>543 F.3d 1276, 1279</u> (Fed. Cir. 2008)............22

*A.B. v. Salesforce, Inc.,* <u>123 F.4th 788</u> (5th Cir. 2024) ..........................................32

*Cedar Point Nursery v. Hassid,* <u>594 U.S. 139</u> (2021) ............................... 16-19, 31

*Curly v. Dean,* <u>4 Conn. 259</u> (Conn. 1822) .................................................................4

*City of New Orleans v. Board of Com'rs of Orleans Levee Dist.*,
<u>640 So. 2d 237</u> (1994)..........................................................................................25

*Dept. of State v. Munoz,* <u>602 U.S. 899</u> (2024) .....................................................21, 28

*Dobbs v. Jackson Women's Health Org.* <u>597 U.S. 215</u> (2002) ..............................28

*Garrison v. City of New York*, U.S. (21) 196 (1874)....................................................17

*GLVSTRA v. Clark County* <u>2025 WL 2608146</u> (D. Nev. Aug. 28, 2025) .............35

*Hearts Bluff Game Ranch, Inc.*, <u>669 F.3d 1326</u> (Fed. Cir. 2012) ..........................17

*Herbert v. Wren*, 11 U.S.(7 Cranch) 370 (1983) .................................................22

*Hignell  v. City of New Orleans*, No. 19-3773 (E.D. La. 2019) ...............................6

*Hignell  v. City of New Orleans*, <u>46 F. 4th 317</u> (5th Cir. 2022) ......................passim

*Hignell  v. City of New Orleans*, <u>154F. 4th 345</u> (5th Cir. 2025......................passim

*Hodel v. Irving,* <u>481 U.S. 704</u> (1987) .............................................31, 32

*HomeAway v. Santa Monica, <u>918 F. 3d 676</u> (9th Cir. 2019)*) ..............................37

*Horne v. Dep't of Agric.*, <u>576 U.S. 350</u> (2015), ..........................................15

*Jackson ex dem. Russell v. Rowland,* 6 Wend. 666 (N.Y. Sup. Ct. 1831) ..............22

*Jacobs v. Nat'l Drug Intelligence Ctr.,*<u>548 F.3d 375, 378</u> (5th Cir. 2008...............26

*Kohl v. United States,*<u>91 U.S. 367</u> (1865)...............................................17

*Lingle v. Chevron,* <u>544 U.S. 528, 528</u> (2005) ...............................15, 17, 19, 20, 29

*Loretto v. Teleprompter CATV Corp*., <u>458 U.S. 419</u> (1982) ..................................15

*Lucas v. South Carolina Coastal Council*, <u>505 U.S. 1003</u> (1992) ....................15, 20

*McDonald v. City of Chicago, Ill.* <u>561 U.S. 742</u> (2010).........................................29

*Meador v. Apple, Inc,*<u>911 F.3d 260</u> (5th 2018) .........................................11

*Mercado v. Lynch,* <u>823 F.3d 276, 279</u> ...............................................26

*Muller v Reynolds*, <u>26 So.2d 498</u> (La. Ct. App. 1946) .............................................22

*Murr v. Wisconsin,* <u>582 U.S. 383</u> (2017).........................................................14, 30

*City of New Orleans v. Dukes,* 427 297 (1976); ...........................................28

*Obergefell v. Hodges*, <u>576 U.S. 644, 664</u> (2015) ...................................................28

*Pelletrau v. Jackson ex dem. Varick,* 11 Wend. 110 (N.Y. Sup. Ct. 1833 ..............22

*Penn Central Transportation Co. v. New York City,* 438 U.S. 104 (1978) ........................................................................................ 13-17, 20, 30

*Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922) ...................................19, 30

*Reeves v. Dougherty,* 15 Renn. (7 Yer.) 222 (Tenn. 1835) .....................................22

*Tahoe-Sierra Preserv. Council, Inc. v. Tahoe Reg. Planning Agen.,* 535 U.S. 302 (2002) ..............................................................................14,15, 25, 30

*Tyler v. Hennepin Cty.,* I598 U.S. 631 (2023) .........................................................14

*United States v. Petty Motor Co.,* 327 U.S. 372 (1946) ..........................................17

*United States v. Gen. Motors Corp.*, 323 U.S. 373 (1945)......................................17

*Sheetz v. City of El Dorado, California,* 601 U.S. 267 ............................................31

*State ex. Rel. Civello v. City of New Orleans et al., 154 La. 271 (1923)* ................25

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which grants the district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiffs' suit against Defendant was based on alleged violations of the First, Fourth, Fifth, and Fourteenth Amendments of the Constitution; the Stored Communications Act; Section 230 of the Communications Decency Act; as well as related Louisiana State constitutional law. This Court has jurisdiction over this appeal pursuant to 29 U.S.C. §1291 because the judgment below is a final judgment of a United States District Court.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Appellee asserts the following issue for review: Whether the district court properly granted Appellees' motion to dismiss for failure to state a claim. In particular:

1. Whether the district court properly dismissed with prejudice Plaintiffs' claims under the Takings Clause because there is no fundamental right to lease a property short-term in a residential area.

2. Whether the district court properly dismissed with prejudice Airbnb's claims under Section 230 of the Communications Decency Act because the

1

challenged Ordinance does not require online booking platforms to monitor, alter, or remove any third-party listing.

## STATEMENT OF THE CASE

This case arises from yet another challenge to the City's regulation of transient lodging, often referred to as short-term rentals ("STR"), in its residential neighborhoods. Two separate, unanimous panels of this Court have affirmed the City's authority to enact such regulations and foreclosed the novel constitutional claims at bar. *See Hignell-Stark v. City of New Orleans*, 46 F.4th 317 (5th Cir. 2022) ("*Hignell I*") and *Hignell-Stark v. City of New Orleans,* 154 F.4th 345 (5th Cir. 2025) ("*Hignell II*"). There is no fundamental right to engage in short-term rentals. *Hignell II,* 154 F.4th at 7. A finding that a fundamental right is somehow implicated by the City's STR regulations would contravene both of these rulings. This Court should affirm the City's well-settled authority once again. To the extent that Appellants have addressed regulations directed toward STR booking platforms which were not the subject of the *Hignell-Stark* litigation, their arguments are contrary to controlling jurisprudence. This Court should also affirm the district court's ruling on those claims.

### A. The City's STR Regulations

*1. The 2019 Ordinance and Hignell I*

Prior to April 2017, it was illegal under New Orleans City Code Sec. 54-491.1(b) to rent a living accommodation in the City for fewer than thirty days (or fewer than sixty days in the French Quarter). After the New Orleans City Planning Commission (the "CPC") studied this issue at the behest of the City Council in 2016,[1] the City Council established an initial framework for permitting STRs in New Orleans in 2017.[2] The next year, however, the City Council directed the CPC to re-evaluate the City's STR laws due to "the proliferation of the industry, and the unintended effects of the current short-term rental requirements."[3] Despite Appellants' assertions to the contrary, all revisions to the City's permitting regime were made following careful study by the CPC and public comment from New Orleans residents. The CPC's study found significant quality-of-life problems created by widespread whole home rentals in residential areas.[4]

The CPC also found that although a number of factors had increased housing costs, "there is sufficient anecdotal evidence that STRs have exacerbated an already difficult market especially in the Historic Core, Historic Urban, and Central Business

---

[1] ROA 359. *See* New Orleans City Planning Commission Short Term Rental Study, 2018, ("2018 CPC Study); *available at* https://nola.gov/nola/media/City-Planning/Major%20Projects/2018%20Short%20Term%20Rental%20Study/Final-STR-Study-10-3-18.pdf

[2] ROA 232, Amended Complaint at p. 7; ROA 359, 2018 CPC Study at p. 18–19.

[3] ROA 359, 2018 CPC Study at p. 3.

[4] ROA 360.

District neighborhoods where concentrations of STRs have been greatest."[5] Additionally, the CPC concluded that "[f]inding a home to rent or purchase within an affordable range has become a significant challenge for many New Orleans residents," and "[t]he city's housing condition has now escalated into a crisis level situation where the lack of affordable housing is affecting residents . . ."[6]

As a result, the CPC recommended, *inter alia*, that residentially zoned "whole-unit" short-term rentals only be permitted if they are owner-occupied and made up of no more than four individual dwelling units with one serving as the owner's permanent residence.[7] Following a public comment period, the CPC adopted the findings of this report and submitted them to the City Council. These recommended changes to the initial STR permitting regime were enacted by the City Council in August 2019.

A group of property owners subsequently sued the City to challenge the revised Ordinances and the non-renewal of their STR permits. *See Hignell I*, <u>46 F.4th 317</u>. They alleged violations of the Takings Clause, the First Amendment, the Fourth Amendment, Due Process, and the Dormant Commerce Clause. *Id*. On August 22, 2022, this Court held that the Takings claim failed because "plaintiffs didn't have property interests in the renewal of their licenses," but the ordinances violated the

---

[5] <u>ROA 360</u>, <u>2018</u> CPC Study at p. 8.
[6] <u>ROA 360</u>, <u>2018</u> CPC Study at p. 8.
[7] <u>ROA 360</u>, <u>2018</u> CPC Study at p.10.

dormant commerce clause because they discriminated against out-of-state property owners. *Hignell I*, <u>46 F.4th at 326</u> and 328, respectively.

In its analysis, the panel noted that the City had offered three interests served by the residency requirement of the 2019 Ordinances: "preventing nuisances, promoting affordable housing, and protecting neighborhoods' residential character." *Id.* at 328. It found that "there's no question that those are legitimate local purposes," but these interests could be served by non-discriminatory alternatives. *Id.* The panel provided several ways in which the City could meet its goals without violating the dormant commerce clause including: (1) increasing penalties for property owners whose guests violate quality-of-life regulations, (2) "having an operator stay on the property" when it is being used as a short-term rental, and (3) "capping the number of licenses available for any given neighborhood." *Id.* The City understood that this Court would not have recommended these alternative measures if the City could not lawfully enact them.

### 2. *The 2023 Ordinances and Hignell II*

In March 2023, the City revised its ordinances again in accordance with *Hignell I*, adopting nearly all of this Court's recommendations. Among other provisions, the 2023 Ordinances (1) capped the number of STR permits allowed in residential areas to one per city block, (2) limited ownership of a STR to natural persons only, (3) allowed property owners to possess no more than one STR permit,

(4) provided a framework for the lawful inspection of properties used as STRs, (5) required an operator to be on the premises while a property is being used as a short-term rental, and (6) provided increased penalties for violations. *See* New Orleans Code of Ordinances ("City Code"), Chapter 26, Article XI and Comprehensive Zoning Ordinance ("CZO") at 21.8.C.18 and 20.3.LLL.1. The *Hignell-Stark* plaintiffs subsequently amended their Complaint to challenge the 2023 Ordinances, alleging further violations of the First and Fourth Amendments, Equal Protection, and Due Process. *See Hignell v. City of New Orleans,* No. 19-3773 (E.D. La. 2019). In their motion for summary judgment, they also raised the argument that renting a home short-term in a residential area is a fundamental property right. *Hignell v. City of New Orleans*, No. 19-3773 (E.D. La. 2019), R. Doc. 170 at p. 11. The district court ultimately rejected all the *Hignell-Stark* plaintiffs' claims with the exception of a challenge to a single 2023 provision that placed restrictions on usufructuaries and trust beneficiaries who seek to obtain STR permits. The plaintiffs appealed on all counts.

After the district court issued the judgment in the case at bar, but *before* Appellants filed their Brief, this Court issued its opinion in *Hignell II*. There, the panel found that the City could not restrict business entities from obtaining an STR permit in violation of Equal Protection and could not require "each STR advertisement to list only one dwelling unit" in violation of the First Amendment.

*Hignell II*, <u>154 F.4th at 20</u>. The panel upheld *all* other provisions of the 2023 Ordinances and affirmed the district court, noting that the City only required an STR operator to perform their duties while an STR property was occupied by guests. *Id.* These regulations, this Court held, "fall squarely within [the City's] broad authority to regulate its neighborhoods." *Id.* at 2.

Importantly, this Court also found that the *Hignell II* appellants could not "rely on an alleged fundamental right to engage in STRs." *Id.* at 7. This Court explained that "Louisiana courts reasonably view short-term rentals with transient guests as a commercial use of property distinct from a traditional residential lease" and "renting a home to transient guests is more analogous to a hotel operation than a traditional residential lease." *Id.* This Court further explained that operating a transient lodging business in a residential area had been "categorically unlawful" prior to 2017 and that "[a]appellants' premise for claiming a constitutionally protected property interest is false" *Id.* at 7-8.

### 3. *The 2024 Ordinance*

In October 2024, the City took additional steps to further its legitimate local interests and address the problems posed by the proliferation of STRs by enacting additional regulations. The 2024 Ordinance set forth requirements for web-based STR booking platforms, like Airbnb, who seek to conduct business in New Orleans. Modeled after similar ordinances from other jurisdictions, the 2024 Ordinance

required platforms to verify that its host-users possess a valid STR permit and thus are renting the property legally before they can collect a booking fee for facilitating the transaction. *See City Code* Sec. 26-622. The 2024 Ordinance also required platforms to provide the City with a monthly report containing basic information regarding these transactions and the properties its users are booking as STRs in order to demonstrate compliance with the regulations. *Id.* Other information was to be made available to the City only via subpoena. City Code Sec. 26-622(7). The 2024 Ordinance went into effect several months after Appellants filed their lawsuit in the district court.

## B. This Litigation

Plaintiffs-Appellants Bret Bodin, Darian Morgan, Brad Newell, Michael Rosas, and Mid-City Mike Rentals, LLC (the "Host Plaintiffs") are residential property owners who seek to rent out portions of their property short-term to transient lodgers through web-based booking platforms like Airbnb, Expedia, and Vrbo. ROA 263-270. Bodin, Newell, and Rosas are all enjoying the privilege of an STR permit and offering STR units for booking online. *Id*. The City's ordinances restrict them from renting out *additional* units. *Id.* Rosas's company, Mid-City Mike Rentals, LLC, and Morgan are the only Plaintiffs who do not currently possess an STR permit. ROA 265-267, 269-270. They are not entitled to an STR permit for the

locations in which they seek to operate because there are already STRs in operation on those respective city blocks. ROA 267, 269.

Plaintiff-Appellant Airbnb, Inc. ("Airbnb") is a San Francisco-based corporation and the most prominent of the STR booking platforms. No other platform has challenged the City's STR regulations. ROA 356.

Plaintiffs filed the operative 11-Count Amended Complaint in April 2025. ROA 226. They asserted two broad categories of claims. The first was brought by Host Plaintiffs to challenge the 2023 Ordinances. The second was brought by Airbnb against the 2024 Ordinance. Host Plaintiffs alleged violations of the Takings Clause, Due Process, the Fourteenth Amendment, the Fourth Amendment, and the Louisiana Constitution. ROA 277-309. Much like the plaintiffs in *Hignell II*, the Host Plaintiffs attempted to bolster their constitutional claims by asking the district court to recognize new fundamental rights and then argued that the City's STR regulations stripped them of these rights. Airbnb alleged violations of the Stored Communications Act, the Communications Decency Act, the First Amendment, and the Louisiana Constitution. It alleged, among other claims, that the 2024 Ordinance improperly treats them as a publisher and requires them to police the content created by its host-users. ROA 277-309. The City moved to dismiss and Plaintiffs cross-moved for summary judgment without conducting any discovery.

On September 8, 2025, in a thorough and well-reasoned opinion, Judge Zainey dismissed all of Plaintiffs' claims with prejudice except a single portion of the Fourth Amendment claim made by Airbnb regarding the platform reporting requirements. ROA 881-931. On appeal, plaintiffs assign error to the district court's ruling on just two of their failed counts. They allege that the district court erred by dismissing the Host Plaintiffs' claim under the Takings Clause and by dismissing Airbnb's claim under § 230 of the Communications Decency Act.

The district court rejected Host Plaintiffs' theory that a viable *per se* takings claim could be made without a physical appropriation of property as well as the argument that a *per se* taking occurred because their alleged fundamental rights were violated. ROA 892-894. The district court rejected Host Plaintiffs' regulatory takings analysis because it ultimately relied on the same false premises as their *per se* takings claims. ROA 899-890. Much like the *Hignell II* panel would later determine, Judge Zainey found that "no fundamental rights are implicated by the City's regulation." ROA 894. He also held that "[o]perating an STR is undisputedly a commercial activity and conducting that activity out of a residence or out of one's own home does not change that characterization." ROA 898. The City's ability to regulate commercial activity in its residential neighborhoods, he noted, is substantial. ROA 898.

The district court dismissed Airbnb's claims under § 230 of the Communications Decency Act because the 2024 Ordinance does not treat Airbnb as a publisher or hold it liable for the content of its users postings. <u>ROA 925-927</u>. Rather, as the Judge Zainey explained, the 2024 Ordinance only requires that Airbnb verify that its host users possess a valid STR permit before collecting a fee for facilitating a booking transaction. <u>ROA 927</u>.

**<u>STANDARD OF REVIEW</u>**

Appellate courts "review the grant of a motion to dismiss under Rule 12(b)(6) *de novo*, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018). Rule 12(b)(6) governs dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' ... it demands more than ... 'labels and conclusions.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And "[a] complaint survives a motion to dismiss only if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Meador*, 911 F.3d at 264.

Appellate courts also review the grant or denial of summary judgment *de novo*, applying the same standard as the district court. *Burton v. Freescale Semiconductor, Inc.* 798 F.3d 222, 226-277 (5th Cir. 2007) (internal citation omitted). Under Federal Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. A factual issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and "material" if its resolution could affect the outcome of the action. *Burton*, 798 F.3d at 226 (internal citation omitted).

## SUMMARY OF THE ARGUMENT

The district court correctly dismissed Host Plaintiffs' novel constitutional challenge to the City's short-term rental regulations. Host Plaintiffs' *per se* or categorical takings claim fails because the 2023 Ordinances do not effect a direct appropriation or physical invasion of their property. Host Plaintiffs do not allege that they do. Instead, Host Plaintiffs assert that the 2023 Ordinances effects a direct appropriation of "fundamental" property rights and that such an appropriation amounts to a *per se* taking. No court has ever recognized this theory. But even if this Court were to accept this theory, Host Plaintiffs' *per se* takings claim would still fail because the purported fundamental rights they have asserted in connection with the operation of short-term rentals have also never been recognized by any court.

Essentially, Host Plaintiffs are asking this court to recognize two new fundamental rights, a "right to lease" and a "right to include," and then find that the 2023 Ordinances have stripped them of these rights to support their novel takings claim.

However, this Court has already held that no fundamental rights are implicated by engaging in a short-term rental business and foreclosed this claim. The 2023 Ordinances are lawful land use regulations enacted pursuant to the City's well-recognized police power. There simply is no constitutionally protected right to operate a short-term rental in a residential area. Host Plaintiffs have also alleged a regulatory takings claim under the *Penn Central* balancing test, but this claim fails because it is built on the same false premise as their *per se* takings claim.

The district court also correctly dismissed Airbnb's challenge to the 2024 Ordinance pursuant to Section 230 of the Communications Decency Act. Airbnb alleges that the 2024 Ordinance unlawfully requires them to police the content generated by its users. Specifically, Airbnb alleges that the 2024 Ordinance requires it to "monitor", "alter", and "delete" content of third parties, and this requirement functionally treats them as a publisher. But the 2024 Ordinance requires no such thing. It only requires that web-based short-term rental platforms verify that a rental listing is lawful before collecting a fee for its booking services. Airbnb misinterprets and misapplies the controlling law in support of this argument.

The sound reasoning of the district court's opinion and ruling should not be disturbed. Accordingly, the City prays that this Court affirm the district court.

## LAW AND ARGUMENT

I. **Host Plaintiffs have not pleaded a cognizable claim under the Takings Clause of the Fifth Amendment.**

The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, provides that "private property [shall not] be taken for public use, without just compensation." *Tyler v. Hennepin Cty.* 598 U.S. 631, 637 (2023) (citing U.S. Const. amend V). The plain language of the Takings Clause "requires the payment of compensation whenever the government acquires private property for a public purpose." *Murr v. Wisconsin,* 582 U.S. 383, 392 (2017) (quoting *Tahoe-Sierra Preserve. Council, Inc. v. Tahoe Reg. Planning Agen.*, 535 U.S. 302, 321 (2002)).

Host Plaintiffs have alleged both a categorical or *per se* taking and a regulatory taking under *Penn Central Transportation Co. v. New York City,* 438 U.S. 104 (1978). The district court correctly determined that both types of Takings claims were meritless.

A. **The Host Plaintiffs *per se* takings claim fails because the 2023 Ordinances do not effect a physical appropriation or invasion of property.**

As the district court explained, Plaintiffs cannot show that a *per se* taking has occurred because the 2023 Ordinances do not in any manner involve the City

14

acquiring physical possession of Host Plaintiffs' property. ROA 893. When a government physically takes possession of property, whether it is personal or real, that government has a categorical duty under the Fifth Amendment to pay just compensation. *See Horne v. Dep't of Agric.*, 576 U.S. 350, 357 (2015). This categorical duty to compensate can also be triggered by a regulation when it forces a property owner to submit to a permanent physical occupation or where it completely deprives the owner of all economically beneficial use of their property. *Lingle v. Chevron,* 544 U.S. 528, 528 (citing *Loretto v. Teleprompter CATV Corp.*, 458 U.S. 419 (1982) and *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019(1992)). Outside of these two narrow categories, regulatory takings challenges are governed by the balancing standards set forth in *Penn Central. Id.*

"This longstanding distinction between acquisitions of property for public use, on the one hand, and regulations prohibiting private uses, on the other, makes it inappropriate to treat cases involving physical takings as controlling precedents for the evaluation of a claim that there has been a 'regulatory taking' and vice versa." *Tahoe-Sierra,* 535 U.S. at 323. Here, Plaintiffs do not allege that the City physically appropriated their property, forced them to submit to a permanent physical occupation or that they have been deprived of all of its economically valuable use. Nor can they. Instead, Host Plaintiffs assert the novel legal theory that the 2023

Ordinances amount to a *per se* taking because they "appropriate" allegedly "fundamental" property rights. ROA 238.

Specifically, Host Plaintiffs allege that the 2023 Ordinances effectively appropriate a fundamental "right to lease" and fundamental "right to include," which they further argue is subsumed under yet another fundamental right, the "right to exclude." ROA 238. This "fundamental right" theory of *per se* takings has never been accepted by this Court or any other and is not contained within the narrow categories established by the Supreme Court. The Host Plaintiffs point to no case that supports their theory.

*1. The cases cited by Host Plaintiffs do not support their novel legal theory.*

The cases Host Plaintiffs cited in their Brief in support of a *per se* taking claim all involve a physical appropriation or invasion of some kind. In *Tyler v. Hennepin County, MN* the Court recognized a "classic" taking because the County directly appropriated proceeds from the tax sale of a private home. 598 U.S. 631, 639 (2023). *Cedar Point Nursery v. Hassid* involved the physical invasion of agricultural property by labor union organizers, which the Court interpreted as the physical appropriation of an easement. 594 U.S. 139, 155 (2021). The Federal Circuit similarly found a categorical taking in *Casitas Municipal District v. U.S.* when the government physically diverted the flow of irrigation water. 543 F.3d 1276, 1279 (Fed. Cir. 2008).

The earlier Supreme Court cases cited by Host Plaintiffs, ostensibly to advance their novel theory of a longstanding "right to lease," are all eminent domain cases that similarly involve the *physical appropriation* of real property by the government. *See United States v. Petty Motor Co.,*327 U.S. 372 (1946); *United States v. Gen. Motors Corp.* 323 U.S. 373 (1945); *Kohl v. United States*, 91 U.S. 367 (1865); *Garrison v. City of New York*, 88 U.S. (21) 196 (1874).

None of the cases listed above relate to the infringement of any species of property right absent a physical invasion or appropriation. Accordingly, they cannot support Host Plaintiffs' novel *per se* takings theory. Host Plaintiffs' citations to regulatory taking cases similarly have no bearing on this claim. *See Hearts Bluff Game Ranch, Inc.*, 669 F.3d 1326 (Fed. Cir. 2012) (where the court conducted a regulatory takings analysis under *Penn Central*) and *Lingle v. Chevron*, 544 U.S. 528 (2005) (where the court rejected an alternative regulatory takings test then in use by the 9th Circuit).

   2. *Host Plaintiffs' theory relies on a distortion of the Supreme Court's decisions in* Cedar Point *and* Lingle.

Host Plaintiffs largely rest their novel "fundamental rights" theory on *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021), despite the fact that the takings claim in that case arose from a *physical invasion* of the plaintiff's property. They do so by embellishing and plainly misrepresenting the court's reasoning, frequently removing the term "appropriation" from the physical context in which it appears to suggest

17

that it also encompasses the abstract "appropriation of rights" they need it to represent for the sake of their argument.

For example, at page 22 and throughout their Brief, Host Plaintiffs argue that "the government effects a *per se* taking whenever it appropriates 'a fundamental element of the property right.' *Cedar Point,* 594 U.S. at 150." This is a gross misrepresentation of the Supreme Court's discussion at that page, which was, in reality, a description of the "sticks" within the proverbial "bundle" that makes up property within a larger overview of *per se* takings jurisprudence. The full sentence reads "[i]n less exuberant terms, we have stated that the right to exclude is universally held to be a fundamental *element of* the property right and is one of the most essential sticks in the bundle of rights that are commonly characterized as property" *Id.* (citations omitted) (emphasis added). The rest of the passage describes how government-authorized physical invasions amount to categorical taking of property, with the court noting that it "has often described the property interest taken as a servitude or an easement." *Id.* The Court did not state that the appropriation of any fundamental element of a property right, let alone *any* fundamental right, would *also* be a *per se* taking, even if there was no physical appropriation. *Id.* (emphasis added). Host Plaintiffs have created this holding out of whole cloth.

Indeed, in *Cedar Point*, the Supreme Court took pains to avoid such a broad view of *per se* takings claims that might unduly call into question certain government

actions. "[M]any government-authorized physical invasions," it advised, "will not amount to takings because they are consistent with longstanding background restrictions on property rights." *Id.* at 160.

The Host Plaintiffs also frequently cite *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528 (2005), a case which involved a challenge to a Hawaiian statute limiting the rent oil companies could charge certain lessees, to support their novel *per se* takings theory. Notwithstanding the fact that it pertained to a *regulatory* taking, *Lingle* is equally illustrative of Host Plaintiffs' selective reading of the case law.

Again, on page 22 and throughout their Brief, Host Plaintiffs also falsely assert that "the Supreme Court has held that a 'direct government appropriation' of a property right is a *per se* taking—even *without* a 'physical invasion'" and cite to *Lingle* at 537. But this, again, is a misleading reading of the passage, which was part of the Supreme Court's review of how both its *per se* and regulatory takings tests developed. The "appropriation" being discussed in *Lingle* here, again, was a physical one. The full passage begins: "The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle* at 527 (internal citations omitted). It continues, "[i]ndeed, until the Court's watershed decision in *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), it was generally thought that the Takings Clause reached *only* a direct appropriation of property." *Id.* (citing, with emphasis added, *Lucas* 505 U.S.

at 1014) (internal quotation omitted). The Court was, thus, not addressing just *per se* takings as the Host Plaintiffs suggest but rather tracing the evolution of its Takings Clause jurisprudence as a whole. Host Plaintiffs are essentially pointing to the existence of *regulatory* takings cases to support their novel *per se* takings theory.

The *Lingle* Court continued its historical review, following the development of regulatory takings law through *Loretto, Lucas*, and *Penn Central*. Notably, the Supreme Court rejected the *Lingle* plaintiffs takings claim, finding that "[o]ur precedents stake out two categories of regulatory action that generally will be deemed *per se* takings for Fifth Amendment purposes." 544 U.S at 538. *See also* Section I.A, *supra.* "*Outside these two relatively narrow categories* …, regulatory challenges are governed by the standard set forth in *Penn Central Transp. Co. v. New York City,* 438 U.S. 104 (1978)." *Id.* (emphasis added). Host Plaintiffs have not alleged that the 2023 Ordinances require them to submit to a permanent occupation or deprive them of all economically beneficial use of their property. Rather, they have proposed a new categorical taking outside of these categories. *Lingle*, thus, stands for the exact opposite of what Host Plaintiffs are proposing. Without a direct appropriation, permanent physical occupation, or deprivation of all economically beneficial use of property there can be no *per se* taking under the Fifth Amendment.

**B. The Host Plaintiffs *per se* takings claims fail because there is no fundamental right to engage in short-term rentals.**

Even if this Court were to accept Host Plaintiffs' unsupported theory that the appropriation of a fundamental right amounts to a *per se* taking under the Fifth Amendment, it would still fail by its own terms because this Court has already found that there is no "fundamental right" to engage in short-term rentals. *Hignell II*, 154 F.4th at 353. The Supreme Court and the Courts of Appeal have been understandably hesitant to recognize new fundamental rights. *Dept. of State v. Munoz*, 602 U.S. 899, 909 (2024). In order for an unenumerated right to be considered fundamental for purposes of protection under the federal constitution, that right or liberty must be deeply rooted in this Nation's history and tradition. *Munoz*, 602 U.S. at 910 (2024) (citing *Glucksberg*, 521 U.S.at 720-21).

> *1. The district court correctly determined that there is no longstanding tradition of short-term rentals.*

The district court correctly determined that Host Plaintiffs have failed to establish a fundamental right to rent out residential property short-term. ROA 927. The City fully adopts and incorporates Judge Zainey's analysis regarding the alleged "longstanding tradition" of short-term rentals. Host Plaintiffs' Brief adds nothing that would change it. Recitations of the elements of property in the Napoleonic tradition or the definition of a lease under the Louisiana Civil Code are just that. They do not signify anything here. In a similar vein, a longstanding fundamental

"right to lease" cannot be extracted from dicta in early 19th Century caselaw. None of the cases that Host Plaintiffs cite relate to the issues at bar.[8] More importantly, none of these cases demonstrate that transient lodging was *not* subject to local regulation in their respective jurisdictions. In New Orleans, as this Court has already noted in two published opinions, short-term rentals were illegal in residential areas prior to 2017. *See Hignell I*, 46 F.4th at 324 and *Hignell II,* 154 F.4th at 353.

As Judge Zainey observed, Host Plaintiff's *per se* takings claim is grounded entirely on legal argument as opposed to actual facts. ROA 894. The Host Plaintiffs' invocation of a "longstanding" fundamental "right to include" is even less supported than their invocation of the "right to lease." Host Plaintiffs cite *no* cases that support this claim, which is remarkable considering they are asking this Court to recognize a new constitutionally protected right. They draw support for this novel right almost entirely from a single law review article written by property scholar Thomas Merrill.

---

[8] *Pelletrau v. Jackson ex dem. Varick* 11 Wend. 110 (N.Y. Sup. Ct. 1833) involved a dispute over a tenant ejection in connection with the payment of a mortgage. *Herbet v. Wren*, 11 U.S. (7 Cranch) 370 (1813) involved a statute of limitations question related to a title fraud claim. *Reeves v. Dougherty*, 15 Renn. (7 Yer.) 222 (Tenn. 1834) was an adverse possession case. *Jackson ex dem. Russell v. Rowland*, 6 Wend. 666 (N.Y. Sup. Ct. 1831) was another tenant ejection case. *Curley v. Dean*, 4 Conn. 259 (Conn. 1822) was a dispute over an employment contract that also included housing as part of its terms. *Butler v. Jones*, 21 So. 2d 181 (La. Ct. App. 145) was a property damage case brought by a tenant against a landlord. *Muller v Reynolds*, 26 So.2d 498 (La. Ct. App. 1946) involved a dispute over the amount of rent allowed to be charged by a landlord under the Emergency Price Control act of 1942.

*See Property and the Right to Exclude*, 77 Neb. L. Rev. 730. ("*Merrill*"). They argue that this text stands for the premise that "the right to include" is a corollary to the "right to exclude," which itself is fundamental right somehow implicated by the City's regulation of short-term rentals. Appellants' Brief at p.30.

But this hardly reflects what Prof. Merrill was actually writing about in the passages Host Plaintiffs' have cited. The one reference to a "right to include" is accompanied by no citation to any source and appears in a fundamentally different context (a discussion of a right to transfer ownership so as to exclude *oneself*). At no point does Prof. Merrill state, as Host Plaintiffs' suggest, that the right to exclude "encompass[es]" the owner's right to include others. Appellants' Brief at pp. 24, 30; *but see Merrill* at 742-743. Host Plaintiffs' have scrambled this passage and removed it from the context in which it appears so it might say what they would like it to say.

Ironically, what *Merrill* does provide at the pages Host Plaintiffs cite undermines the notion that an appropriation of a "right to include" would be a *per se* taking (beyond the reach of modification by a legislative act). Prof. Merrill makes frequent reference to the "right to use," and the "right to transfigure" one's own property, but makes it equally clear that the "right to use" and the "right to transfigure" can be severed from the "right to exclude." *Id.* For each, Prof. Merrill provides examples that include legislative restrictions. *Id.* Earlier in the same article, Prof. Merrill explains that "the state may adopt a law that preserves the right to

exclude but takes away the right to use. *Zoning and other types of land use controls are familiar examples*." *Id.* at 741. (emphasis added).

Of course, as the district court held, nothing in the 2023 Ordinances prevent a homeowner from exercising their right to exclude or include whomever they wish from their property. ROA 893. The 2023 Ordinances are land use and zoning controls aimed at a specific commercial activity: the operation of a transient lodging business in residential areas. No longstanding immutable right is effected by them. The authorities cited in Host Plaintiffs' Brief support Judge Zainey's conclusion.

    *2. This Court's previous rulings have foreclosed Host Plaintiffs claims.*

In *Hignell II,* this Court, like the district court in the instant matter, recently held that there is no constitutionally protected interest in leasing a property short-term in a residential area. *Hignell II*, 154 F.4th at 353. This is in accord with this Court's previous decision in the same litigation. Three years before the ruling in *Hignell II*, this Court found that the *Hignell-Stark* plaintiffs' Takings claim failed because operating a short-term rental is a "privilege, not a right," and there is no protected property interest in a short-term rental permit. *Hignell I,* 46 F.4th at 324. There is no plausible way the *Hignell I* panel could have reached its conclusion if the plaintiffs also had a fundamental right to lease their residential property short-term.

To be clear, the Host Plaintiffs in the instant case have alleged that engaging in a short-term rental business also implicates a purported "right to include" that was not specifically considered in *Hignell II,* but this does not change the significance of that opinion to this case. Host Plaintiffs are plainly concerned with renting out their residential property short-term and nothing more. They have alleged no facts related to anything else. ROA 263-270. As the district court aptly noted, "the Supreme Court has made clear that a property owner cannot so narrowly define the property right at issue in order to support the contention that some right has been completely abrogated." ROA 899, citing *Tahoe-Sierra,* 535 U.S. at 327 & n. 23. However Host Plaintiffs seek to construe operating a short-term, there is no fundamental right implicated by it.

In asserting their novel *per se* takings theory, Host Plaintiffs are asking this Court to take the extraordinary step of declaring not one, but two new fundamental rights. Such declarations would be contrary to the City's well-recognized municipal police power, which this courts have affirmed time and again. *See e.g. Hignell II*, 154 F.4th at 350; *City of New Orleans v. Dukes*, 427 297 (1976); *State ex. Rel. Civello v. City of New Orleans et al.,* 154 La. 271 (1923). They would also be contrary to longstanding zoning law principles first established in *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926). *See City of New Orleans v. Board of Com'rs of Orleans Levee Dist.*, 640 So. 2d 237, 245 (La. 1994)(string citation

25

omitted). In addition, recognizing these new rights would effectively contravene this Court's rule of orderliness. "One panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court." *Mercado v. Lynch*, 823 F.3d 276, 279 (citing *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008)).

3. *Host Plaintiffs cannot ignore this Court's ruling in* Hignell II *simply because it arose from a Due Process Clause claim.*

Host Plaintiffs have attempted to distinguish this Court's holding in *Hignell II* from the case at bar because it arose in the context of a due process claim as opposed to a takings claim. Appellant's Brief at p. 37. This makes little sense for several reasons. *First*, as discussed, this Court has already rejected a Takings claim with respect to the renewal of the *Hignell-Stark* plaintiffs' STR permits, finding that they had no such property interest. *Hignell-Stark I* at 324.

*Second,* the panel's opinion in *Hignell II* addressed far more than a narrow due process claim. The *Hignell II* panel found that the plaintiffs did not have a "constitutionally protected property interest" in renting their homes short-term. *Hignell II*, 154 F.4th at 353. This language is unequivocal and clearly applies to the Host Plaintiffs. Although the panel noted that "a homeowner may be able to articulate a constitutionally protected property interest implicated by the City's zoning ordinance," it found that the situation was "distinguishable because Appellants essentially claim a right to operate an unlicensed commercial business

from their homes." *Id.* at 354. In this case, Host Plaintiffs takings claims failed in the district court because they were asserting the right to do the exact same thing.

*Third*, the difference Host Plaintiffs highlight between the fundamental right claim under review in *Hignell II* and their own militates against this Court finding that Host Plaintiffs have pleaded a cognizable takings claim. In *Hignell I,* this Court squarely addressed the relationship between property rights under the Due Process Clause and the Takings Clause. 46 F.4th 317. The panel explained that under due process the government is merely obligated to provide a property owner with procedural protections but for purposes of a takings claim, "a property interest must be so deeply rooted in custom that 'just compensation' for appropriating [this interest] necessarily includes money damages." *Id.* at 324. The panel further noted that "surmounting that hurdle should be quite difficult." *Id.* In other words, a finding of a property interest for purposes of the Takings Clause requires significantly *more* than a finding of a property interest for purposes of due process—not the other way around.

Importantly, this Court also demonstrated how the assessment of a property interest for due process purposes can inform its assessment of that same interest under the Takings Clause. *Hignell I*, 46 4th at 323. Citing reasoning from due process cases that found that "mutually explicit understandings" could give rise to a property interest, the panel explained that this Court's "rule of orderliness" required it accept

27

that the same "mutually explicit understandings" could give rise to a property interest under the Takings Clause. *Id.* This is logical. Establishing the property interest is the first step in the analysis of either type of claim. Here, Host Plaintiffs' are asserting the exact same alleged fundamental "right to lease" as this Court previously reviewed in *Hignell II*. They have cited no authority whatsoever to support the contention that the *Hignell II* opinion is inapplicable here simply because the Host Plaintiffs have chosen to assert this same right in the context of a takings claim.

*Last*, it is important to emphasize that Host Plaintiffs have invoked purported "fundamental rights," not merely abstract property interests. Because "identifying unenumerated rights carries a serious risk of judicial overreach," the Supreme Court has "exercised the utmost care whenever [it is] asked to break new ground in this field." *Department of State v. Munoz*, 602 U.S. 899, 910 (2024). Accordingly, in assessing fundamental rights, the Supreme Court has never limited its inquiry in the way Host Plaintiffs suggest this Court should. Rather the process has been "guided by many of the same considerations relevant to analysis of *other constitutional provisions* that set forth broad principles rather than specific requirements." *Obergefell v. Hodges*, 576 U.S. 644, 664 (2015). (emphasis added).

A useful illustration is provided by the Supreme Court's analysis in *Dobbs v. Jackson Women's Health Org.* 597 U.S. 215 (2002). In that case, which arose from

due process and equal protection claims, the court determined that fundamental rights are those which are "deeply rooted in our history and tradition" and "essential to our Nation's scheme of ordered liberty." *Id.* at 237-238. In developing this standard, the Court quoted two cases that, notably, *did not* arise in the context of a due process claim: *Timbs v. Indiana*, 139 S.Cr. 682, 686 (2019), which related to a claim of excessive fines under the Eight Amendment; and *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010), which involved a challenge to a municipalities gun control laws under the Second Amendment. *Id.* at 238. The Court was clearly not limiting its examination to due process jurisprudence. Fundamental rights are, indeed, fundamental. Host Plaintiffs cannot invoke a fundamental "right to lease" and ignore this Court's previous examination of the exact same purported right simply because it arose in a different context. The reasoning in *Hignell II* clearly controls here. There is no fundamental right to lease a home short-term.

Accordingly, this Court should affirm the district court ruling on the Host Plaintiffs' *per se* takings claim.

### C. Host Plaintiffs regulatory takings claim fails because it relies on the same failed premise as their *per se* takings claim.

The Supreme Court has "recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster—and that such 'regulatory takings' may be compensable under the Fifth Amendment." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537, 125

29

S. Ct. 2074, 2081, 161 L. Ed. 2d 876 (2005) citing *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). While property may be regulated to a certain extent, if a use restriction "goes too far" it will be recognized as a taking. *Murr*, 582 U.S. at 393 (citing *Penn Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). The *per se* or categorical rules described above are not applicable to a claim for a regulatory taking. *Tahoe-Sierra*, 535 U.S. at 323. Unlike the categorical rules that apply with *per se* takings, the analysis for determining when regulations amount to a compensable taking are more complex. *Id.* This area of the law has been characterized as "ad hoc, factual inquires, designed to allow careful examination and weighing of all the relevant circumstances." *Murr*, 582 U.S. at 393 (quoting *Tahoe-Sierra,* 535 U.S. at 322). Generally, the courts assess "a complex of factors" included the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action. *Murr*, 582 U.S. at 393 (citing *Palazzolo*, 533 U.S. at 617). These factors derive from the familiar test applied by the Supreme Court in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978).

The district court applied this test and correctly determined that Host Plaintiffs had failed to state a cognizable regulatory takings claim. In his Order and Reasons, Judge Zainey found that although Host Plaintiffs had satisfied the first two prongs of the *Penn Central* test, they had failed to allege sufficient facts to satisfy the third prong. ROA 897. This is because they had, circularly, claimed that the government

action here—enacting the 2023 Ordinances—was so onerous it effected a categorical taking akin to physical invasion of their property. ROA 898. Of course, if this were the case, there would be no reason to perform any detailed ad hoc factual analysis at all. ROA 898. Categorical takings "cannot be balanced away." *See Cedar Point*, 594 U.S. at 146. Host Plaintiffs have essentially argued that because there was a *per se* taking, there was also a regulatory taking, and nothing more. The City trusts that this is because Host Plaintiffs do not want to recognize the 2023 Ordinances for what they are: reasonable restrictions on the commercial use of residential property. Permitting conditions that further a legitimate police power purpose, like those at bar, "do not entitle the landowner to compensation even if they require her to convey a portion of her property to the government." *Sheetz v. City of El Dorado, California,* 601 U.S. 267, 274. Such conditions are a "hallmark of responsible land-use policy" and "put the landowner to the choice of accepting the bargain or abandoning the proposed development." *Id.*

Host Plaintiffs' Brief merely reiterates their circular argument in an effort to avoid the inconvenient truth. The 2023 Ordinances do not amount to a compensable regulatory taking. Host Plaintiff's reference to *Hodel v. Irving*, 481 U.S. 704 (1987) is misplaced. In that case, the Supreme Court found that the character of the government's action, a mandatory escheatment law effecting members of the Oglala Sioux Tribe, was so "extraordinary" it amounted to a compensable taking under the

31

Fifth Amendment. The 2023 Ordinances are reasonable land use restrictions. Host Plaintiffs must obtain an STR permit if they wish to operate a transient lodging business in a residential area. It is a "privilege, not a right." *Hignell I,* 46 F.4th at 324. This is a far cry from a law that "amounts to virtually the abrogation of the right to pass on property to one's heirs." *Hodel*, 481 U.S. at 705.

Host Plaintiffs regulatory takings claim fails for the same reasons as their *per se* takings claim. This court should affirm.

## II.    The 2024 Ordinance Does Not Violate Section 230.

The district court correctly dismissed Airbnb's claims under Section 230 of the Communications Decency Act.

Section 230(c)(1) of the Communications Decency Act states that "[n]o provider of an interactive computer service shall be treated as a the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The controlling case in this Court with regard to the application of Section 230 is *A.B. v. Salesforce, Inc.*, 123 F. 4th 788 (5th Cir. 2024)("Salesforce").

Salesforce examines whether the provider or user of an interactive computer service is being treated as the publisher or speaker of third party content. *Salesforce* 123 F.4th at 792. The analysis in *Salesforce* lends itself directly to the district court's reasoned conclusion: "Of course, a publisher might also need to police the use of its

products. But that is not because of the publisher's unique functions. Rather, it is because a publisher—like Salesforce and every other entity subject to United States federal law—owes a statutory duty to the public not to knowingly benefit from participation in a sex-trafficking venture." *A.B. v. Salesforce, Inc.*, 123 F.4th 788, 798 (5th Cir. 2024). The duty imposed on Airbnb by the 2024 Ordinance is, similarly, not that of a publisher but rather the duty not to facilitate illegal activity.

Nothing in Section 230 suggests that municipalities may not restrict online platforms from profiting from illegal activity. Contrary to Airbnb's specious arguments on this issue, the City does not seek to hold Airbnb liable for third-party content posted online. A review of the 2024 Ordinance reflects that the City is targeting commercial conduct, not speech. Airbnb is free to allow any third-party to publish as many listings as Airbnb's servers will allow. Additionally, the 2024 Ordinance does not demand that Airbnb remove any listings at all. As the district court aptly noted, "Airbnb may very well determine that for its business model the most effective means of compliance will be to review its website so as to remove unpermitted host listings from its site but the 2024 Ordinance does not compel that action." ROA 927.

There is little doubt that Airbnb takes issue with the 2024 Ordinance because it prevents them from processing payments for short-term rentals that do not have a valid permit. Airbnb claims that the 2024 Ordinance requires it to "monitor[],

33

screen[], and delet[e] [] content," but these requirements can be found nowhere in the text of the law. Appellant's Brief p.46; City Code 26-622. The 2024 Ordinance only prohibits Airbnb or any other platform from collecting a fee for facilitating an illegal activity: renting an unpermitted short-term rental. City Code 26-622(a)(1). Airbnb seeks to invalidate the 2024 Ordinance because they would like to collect fees for illegal short-term rental activity in the City of New Orleans.

**A. The verification requirements do not require Airbnb to monitor, screen, or delete third-party content.**

Airbnb argues that verifying a listing "functionally make Airbnb a guarantor of the veracity and legality of third-party speech in direct defiance of Congress's judgment in Section 230." Appellant's Brief at p. 51. This is simply incorrect. Airbnb is free to have its website cluttered with unpermitted short-term rentals. And the 2024 Ordinance does not demand that Airbnb remove unpermitted short-term rental listings either. However, the 2024 Ordinance does make it unlawful for Airbnb to accept or earn a fee for an unpermitted short-term rental. City Code 26-622(a)(1). A business cannot—and should not—be permitted to profit from unlawful activity, yet that is essentially what Airbnb's position demands. The 2024 Ordinance appropriately addresses the legality of commercial activity. It creates a requirement akin to a convenience store proprietor checking the ID of a costumer to verify that they are of legal age before selling alcohol to them. Much as the local convenience store is prohibited from profiting from alcohol sales that are unlawful,

Airbnb is prohibited from profiting on short-term rentals that are unlawful. As *Salesforce* demonstrates, Section 230 cannot be read to permit platforms like Airbnb to engage in conduct that undermines other statutory duties.

**B. This Court's "functional" analysis does not demonstrate that the 2024 Ordinance violates Section 230.**

A review of what the law "actually requires" confirms that the 2024 Ordinance does not run afoul of Section 230. Contrary to Airbnb's assertions, the ordinance does not require Airbnb to review the substance of any listing; it merely prevents Airbnb from facilitating an unpermitted booking transaction. This is operational, not editorial. Airbnb is not being asked to determine "the veracity and legality of third-party speech." Appellant's Brief at 51. Airbnb is only required to determine that a listing corresponds to a licensed property *before it collects a fee*, which is nothing more than confirming the transaction they seek to earn income from complies with the City's regulations.

Preventing Airbnb from collecting a fee for an unlicensed short-term rental does not treat Airbnb as a publisher. Airbnb cites to *Greater Las Vegas Short-Term Rental Ass'n v. Clark County.* (*GLVSTRA*), 2025 WL 2608146, at *1 (D. Nev. Aug. 28, 2025) and concludes that the 2024 Ordinance should be found to violate Section 230 for the same reasons. However, *Clark County* is distinguishable on a very critical ground because the 2024 Ordinance does not require that Airbnb verify listings "prior to publication."

35

It is evident that Airbnb's platform allows for instant booking, which the City posits is the reason why they assert that they must verify listings that may never be booked. But this is a business decision, and the City is not interfering with that decision. Certainly, as the district court surmised, Airbnb is free to make a different business decision. Airbnb could, for instance, simply reject any booking requests for unpermitted short-term rentals that appear on their platform. The City recognizes that Airbnb's website may look drastically different under this scenario because they would be allowing unbookable listings to be presented to users of their platform, but again, their business decision to delete/remove unlicensed short-term rentals is their own. The 2024 Ordinance does not require them to perform this task. And Airbnb's manufactured problem does not trigger Section 230.

Just as a convenience store may not lawfully sell alcohol without first confirming that the purchaser is legally eligible, Airbnb cannot facilitate a booking transaction without verifying the legality of the underlying short-term rental. Our convenience store owner does not violate the law by allowing minors to view the product on their shelves, even though that alcohol cannot lawfully be sold to minors. Likewise, Airbnb does not violate the law simply by displaying listings for unpermitted short-term rentals. The law is broken when the convenience store completes the sale to a minor—and, in parallel, when Airbnb facilitates and profits from an unpermitted short-term rental transaction. Airbnb's ability to collect a fee

for a short-term rental is a commercial matter that has nothing do with publishing and/or policing content. It is simple, if Airbnb wants to collect a fee for short-term rentals in the City of New Orleans, Airbnb must confirm that the short-term rental has a permit before collecting a fee for that transaction. This is not a publication restriction; this is, like the 2023 Ordinances, a restriction on commercial activity.

Because the 2024 Ordinance's verification requirement does not impose liability on Airbnb as the speaker or publisher of third-party content, Section 230 simply does not apply. Thus, Airbnb's Section 230 cause of action fails as a matter of law.

## C. The district court did not misapply Section 230.

Airbnb attempts to distinguish *HomeAway* v. *Santa Monica*, 918 F.3d 676 (9th Cir. 2019). But that decision is entirely consistent with the Fifth Circuit's functional approach: ordinances that regulate booking transactions do not treat platforms as the publishers of listings. The 2024 Ordinance, like the ordinance upheld in *HomeAway*, leaves hosting content undisturbed and instead targets only the facilitation of transactions for unlicensed short-term rentals. Under the Fifth Circuit's functional analysis, the 2024 Ordinance imposes no publisher duties, regulates no speech, and does not implicate—let alone conflict with—Section 230. Rather, it regulates commercial conduct squarely within the City's police powers.

Once again, contrary to Airbnb's effort to obscure the requirements of the 2024 Ordinance, the Ordinance does not require Airbnb to monitor, alter, or remove content. Airbnb is not being treated as a publisher or speaker in any respect. Nor is Airbnb being "forced to choose between Section 230 immunity and operating a profit-generating business." Appellant's Brief at p.62. The 2024 Ordinance simply bars Airbnb from profiting from an unlawful activity— facilitating and monetizing a booking for a short-term rental that lacks the legally required permit.

## **CONCLUSION**

The District Court properly granted the City's Motion to Dismiss. Accordingly, Appellees pray that this Honorable Court affirm the dismissal by the district court.

Respectfully submitted,

/s/ *Sean M. Markey*

**SEAN M. MARKEY, LSB #41467**
ASSISTANT CITY ATTORNEY
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET
CITY HALL - ROOM 5E03
NEW ORLEANS, LOUISIANA 70112
TELEPHONE:  (504) 658-9800
FACSIMILE:   (504) 658-9868
E-MAIL:  sean.markey@nola.gov

*Attorneys for Defendant-Appellee*
Dated: December 15, 2025

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

Pursuant to 5th Cir. R. 32.3, the undersigned certifies this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because:

1.      This brief contains approximately 8,909 words.

2.      This brief complies with the typeface requirements Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-Point font.


/s/ *Sean M. Markey*
**SEAN M. MARKEY**

*Attorney for Defendant-Appellee*
Dated: December 15, 2025

# CERTIFICATE OF SERVICE

I, Sean M. Markey, hereby certify that the foregoing document has been served via the Court's Electronic Case Filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on December 15, 2025, on all registered counsel of record, and has been transmitted to the Clerk of Court.

/s/ *Sean M. Markey*
**SEAN M. MARKEY**